Mr. Smith, Good afternoon. Good afternoon, Your Honor. R. G. Lloyd Smith. I represent Linda Rosenberg. She was told by the Federal Court of Federal Claims that her takings claim could not go forward because she wouldn't admit that the government was authorized in assessing the tax that the government itself agrees that is not authorized. I think you lost me already right here at the outset here. What is your point? The point is that the Court of Federal Claims made a clear error in requiring the claimant in a takings claim to admit judicially that the government's action in taking your property was authorized. Well, I thought the entire thrust of the complaint in every part of it was that the government's action was not authorized because the collection of this excise tax was contrary to the terms of the statute. Absolutely, Your Honor. Okay, but if that's your position, then it seems to me you can't assert a takings claim because the takings claim, as I recall the law, requires that the he who brings it says the government was authorized to do what they did but they have to pay me for it. And that's not what you're saying. You're saying the government wasn't definitely not authorized to do what it did. What it did was this issue has come up three times before in decision before this court. And the key pivotal issue is what does the word authorized mean? And this court has taught us that it means not that the conduct is lawful, but that the government in taking the property was acting under color of law so that it's fair to charge the government with the obligation to pay for it. Well, there's no hint here that the government thought it was exercising eminent domain type powers. This was an ordinary exercise of taxing powers, innumerable different kind of tax laws enforced by IRS all the time against all of us here. So it seemed to me you have an awfully steep hill to climb to have a viable takings claim when IRS has incorrectly applied a tax statute. I agree with everything you're saying. What is the property that was taken? The property was, they reached into my pocket. They took money. They took my money. They took money, but that's not a taking, is it? Yes, it is. And the Supreme Court said, and Sperry and some others, that taking money is not taking a property. Sperry was entirely different. That's a use fee on using the court of international justice to prosecute Sperry Rand's money claim. That's a use fee. That's much different. But the point I'm making that was in there and others is that money is not the subject of a taking. It cannot be the subject of a takings claim. You know, there are some dicta that appear in cases like Sperry, which torn from the holdings of the case might be one to believe that. But think of it conceptually. If the government comes in and takes gold off the table, that's money. If the government takes currency, that's personal property. If the government takes a bank account, that's personal property. The issue is not the character of the personal property. It's the fact that it's property. I don't think you're correct about that. If the fact that things of monetary value being personal property necessarily support a taking, then every time the government collects money from somebody, it would support a takings case. That can't be the law. Hence we get into part two of Judge Brayden's opinion where she says a tax is not a taking. The very point that you just made is that otherwise the Fifth Amendment takings law would envelop all of tax. And so there's a distinction. And this court has said several times, most recently in Nations Bank of Texas, that yes, a tax is a taking. No, a tax can be a taking under certain very extreme circumstances such as when it's retroactively applied, which exception, I would think, proves the general rule that normally a tax cannot be a taking. It says actually the precise words are if it's arbitrary and capricious, then it is a taking. As to amount to a confiscation. Yes. You've got to read the whole sentence. Yes. That's part of it. Yes. That's a Nicholas v. Coolidge case, right? Yes. Back in 1827? It essentially adopts the teachings of Nicholas versus Coolidge. And in U.S. Shoe, you go even further. But it has to be almost a confiscation. So if you have a 100% tax on something, that could be considered a taking. But not by itself. In U.S. Shoe, where you discussed also the arbitrary and capricious exception, that was not a 100% taking. That was an export tax on property. So it was not a taking of the shoes. It was a tax on the shoes. And the court there carefully decided on the facts. Well, it wasn't arbitrary enough to be a taking. Here we have something that is not even authorized by Congress. Here we have an agency of the government that for 27 years has known internally that it was not authorized by Congress to take money for this type of telephone charge. It is known as, and even after eight circuit court opinions, still was reaching into people's pocket to take this personal property. That's confiscation, Your Honor. That is taking so contrary to law that it is utter lawless conduct. It may not have been intentionally evil, but it was done with knowing disregard that there was no congressional authority to do this. So is this arbitrary and capricious? Well, under the APA, it would be. Because under the APA 702, we all know that when a federal agency acts contrary to the intent of Congress, its conduct will be struck down as arbitrary and capricious. Here it's worse. Here the conduct goes on for 27 years, and not one or two or three courts of repeal say this is wrong, this is lawless. It takes eight. Well, there was one at the time you filed your complaint, so it seemed to me the other seven were not so relevant. Well, and three, I think the government got four by the time our motion to dismiss was heard, Your Honor, or until the government changed its position. It actually got up to eight by the time the government changed its position. This business of administrative non-acquiescence can be carried to such extremes as it is here that it is a confiscation of money. If we were to think that in this case we don't have a taking some property, then the case is moot, isn't it? No, it's not moot, Your Honor, because we have the... Let me say that if we think that the money is not property in this sense, in this case, then this case is moot. Well, our taking is not very good. Pardon? Our taking is not very good, if you agree with that conclusion. I would agree with you there. But it's moot because the government is refunding this money as we speak. I wish that were so. The GAO has just issued a report saying that the IRS's projections on the efficiency of this program have been seriously not met. It's not working. There's been serious inability to get money back to people who don't follow income tax returns. So there are billions of dollars still in play here, and we still need a judicial remedy, Your Honor. My client is Linda Rosenberg. She has a refund claim, too, and she's asking this court that she be allowed to proceed with the refund claim. Why didn't she get the money when she filed the refund? Well, she didn't file a refund claim. She's asking this court to find that there was a waiver of that. Isn't there a condition preceding to filing in the Court of Federal Claims that you file an administrative claim that you exhaust your administrative remedies? Yes, but it is a waivable requirement. That's where the court below committed error. It found as a matter of law that this was not a waivable claim. And the Supreme Court has previously ruled in Tucker v. Alexandra and fell in tarrant that this is a waivable condition preceding, Your Honor. Oh, only if it's futile. Actually, no. In Tucker v. Alexandra, the Department of Justice simply didn't raise it and tried the case and it lost. And on appeal, it said, well, this is subject matter jurisdiction. It can be raised at any time. The court says, no. You waived it in this case. So it can't be subject matter jurisdiction. It's not subject matter jurisdiction. However, if they don't waive it, then you still must exhaust your administrative remedies. Did Ms. Rosenberg exhaust her administrative remedies? Well, we think they did waive it, Your Honor. No, did she exhaust her administrative remedies? Did she file an administrative claim? No, because they were waived by the government. The issue of waiver is planned. The court did not rule that the waiver allegation was insufficiently planned under Rule 9. Only fraud in the state must be pled with specificity. So if there was a question about waiver, I'm getting into my rebuttal time. But here the waiver doesn't depend on testimony or something uncertain. The only basis of waiver was the 2005 information announcement by the IRS. And I believe the court had that. I know we have it. And so then the question is, does that document support a waiver or not? It looks to me like it doesn't. It says people should file administrative claims rather than saying they shouldn't. Well, they say they should file them. It also says, and conduct is more important than words, they say that, yeah, file them. But we're not going to grant them. We're not going to look at them. So that all the reasons are possible. No, no. All it said was during dependency of some unspecified appellate litigation, they won't be processed. The necessary implication of that is once that litigation is over, they will be processed. And whether they're paid or not presumably will depend on the outcome of the litigation. That doesn't look like waiver to me. That looks like the opposite of waiver. On the contrary, they say until all litigation pending in any court of appeal in the United States is over. And at that point in time, you have half of corporate America pursuing this claim, Your Honor. You have eight courts of appeal. What does that have to do with waiver? You're saying that on the face of that document, they obviously, they, the IRS, was obviously granting a waiver from the statutory requirement of an administrative filing. I just don't see how that document in any way supports the idea that a statutory prerequisite is being canceled. What they were saying is that we, the government, will not comply with our side of it. We won't look at these. We won't act on them. They won't influence our conduct. And after six months, you go sue us because we have just abandoned the whole administrative, our duties on the administrative side of this. The question is waiver. The propriety of the conduct of the government is a whole different matter. The question is whether looking at this document is a basis for saying the IRS waived the prerequisite. I don't see how you can get there from here when the document says everybody should go ahead and file their administrative claim. That's the opposite of waiver. What the government is saying is that they're relinquishing, it's an intentional relinquishment of known right, they're relinquishing their ability to look at this and change their mind. They're looking, they're relinquishing their right to maybe agree with the taxpayer. They're relinquishing the right to look at each one of these on a case-by-case basis and do their job as an administrative agency to make a decision. No, that's not right. That's not right. All they're saying is we're going to delay processing. They're not saying we refuse to process the claims. They're not saying we refuse to ever pay the claims. All they're saying is file the claims, but there will be a delay. I'll reserve my remaining minute. Ms. Del Sol. Good afternoon. May it please the Court. I'd like to first throw out. When did the companies that provide toll services begin charging based only on time rather than the combination of time and distance? My understanding is that that's a change that took place in the early, late 80s or primarily the early 90s, I think largely because of the changeover to the cell phone system. So then by the time this complaint was filed in December of 2005, many companies had been charging for time only for about 15 years? I think it was a gradual process, Your Honor. A growing number of companies were billing by time only. Yes. I didn't handle the cases that dealt with the merits of the telephone excise tax cases, so I'm not familiar with the factual details of that. But my general understanding is that it was something that gradually occurred in the 1990s with growing frequency. So then it sounds like IRS collected a very large amount of money from a very large number of business and individual taxpayers for a long time for services not covered by the statute. Well, Your Honor. Later, IRS said, well, we'll give people refunds but only going back to 2003. What about all the money collected between 1990 or whenever it started in 2003? The government gets to keep 13 years' worth of illegally collected taxes? Well, I think here we're dealing with the statute. Is the answer yes? I think the question, the difficulty here, Your Honor, is that we're dealing with… …all the millions of dollars that they illegally collected for 13 years. Well, I think it's a matter of an interpretation of a statute that wasn't clear, that was litigated in the court. The government won it in the first district court that this was litigated in and got a dissent from one circuit judge. I want to get an answer to my question. Is it your position the government can lawfully keep all the illegally collected taxes from 1990 until the time this complaint was filed? I think this is akin to a change in the law in that there was a confusion about what the statute meant. There was a change in practice in the industry. There was litigation over it. When it was resolved against the government, those parties who didn't file claims within the statute of limitations can't go back 15 years… …and recover taxes from something years ago when they didn't file a claim in the first instance. And this was a situation where this statute had been enforced and no one had questioned its validity for years. The industry gradually changed its practice when people started to realize, hey, the toll telephone charges are defined differently from how we're now billing them. They picked up on this nuance in the statutory language and started litigation, and it was something that was disputed. Do you think it's reasonable for the government to know that it's collecting improperly, not tell people, keep collecting, and then get to keep the money? Well, I don't think that's what happened, Your Honor. I think the government reasonably thought, and at least one district court and one circuit judge thought, that the government's interpretation of the statute is still extending to toll telephone charges under the new type of billing arrangements. How can that be? The statute uses the words time and distance. On its face, it's clear that the toll charges have to be based on both time and distance. So once the charges were only based on time, you're outside the statute. On its face, clear as a bell. Well, I think that that certainly wasn't what the first district court had looked at this found, and that's not what Judge Rogers in the Sixth Circuit found looking at this. And the Solicitor General looked at this and found that there were arguments because there's billing for local telephone charges as well, and the long distance, the toll telephone charges in some instances use local services. There were a variety of arguments that were raised. We're not here to litigate that today, but it certainly was something that was litigated. The Solicitor General reviewed the situation and authorized appeals on this issue, and the issue was being resolved in the courts of appeals all at about the same time in the same year. And it certainly seems a situation where having won a case in one district court and having gotten a dissent in the Sixth Circuit, that this was an issue where there were some arguments for the government. So this was not a situation where it was an arbitrary taking money that the government knew it legally couldn't take. It was a situation where there was a question of how do you interpret the tax laws. And in that context, I think it's not an arbitrary or capricious action that can be treated as a taking. It's just a tax. There was a resolution of how do you interpret this tax law, and when it was resolved against the government, the government came back and said, within the current statute of limitations, anybody can file a refund claim, and we're providing a streamlined procedure for you to do so. And so I think that this really is just like any other case where there's disagreement on how you interpret the tax law. And in that context, the Supreme Court has made clear that a tax isn't a taking, and it's not a situation where it's so arbitrary or capricious as to move into the context of a taking. And I'll point out that the Supreme Court in Mendoza also has recognized that it's appropriate for the government, even if it's lost in one circuit, to continue litigation. Why isn't this tax, like Judge Gaiar's question, about a tax at the rate of 100%? If I'm a business person, and I operate long-distance telephone call selling business, and so my business runs based on long-distance telephone calls, and I have to pay this tax to IRS at the rates they determine, and then it turns out 100% of those taxes are illegally collected. That's 100% tax. Why doesn't that rise to the level of arbitrary and capricious? Well, it's not a 100% tax on your business. It's a tax on… No, 100% of what is collected is illegally collected. Well, because it turned out that, to the extent that they had billed time only, that the court resolved that issue by saying that you can't tax that. I mean, that's like saying that, you know, if there were a statute that says income is only income if you work between the hours of 9 to 5, and then somebody started working till 5.30, and that tax is income tax, then there might be a dispute on that law. But that's the sort of thing that this is. It's just a fluke of the statutory definition happened to a reflected industry practice. I'm not sure that anybody at the IRS even realized industry practice was changing until it started to change on a large scale and these suits started to come up. I mean, this is something that just is sort of a happenstance of an unfortunate way that Congress happened to have defined a service, and I think the spirit of the statute was that long-distance telephone calls should be taxed. And it was just a fluke that Congress happened to have looked to what the industry had done at the time in defining that, and I think what the IRS did was to pursue the spirit of the statute. I think it's an irresponsible argument to say that operative statutory language put in intentionally by Congress is a fluke. It's obviously not a fluke. It may be that business circumstances later changed, and the answer to that is Congress can change the operative terms of the statute. They never did change the operative terms of this statute. It requires that there be both time and distance in calculating the tolls or the excise tax doesn't apply. Well, again, Your Honor, I think this is an issue that reasonable minds could differ on. I mean, maybe saying it was a fluke was a bad choice of words, but it was a choice that wasn't looking forward to the time that this might change. I mean, I think it's very unlikely that anybody in Congress at the time thought, well, we're just going to lock this into this particular method of billing right now, and we don't intend this tax to apply if the industry decides to change its method of billing. I don't think that was something that was thought of at all at the time. Well, what's your basis of saying that? I don't think I'm not aware of anything in the legislative history that indicates that, and I think that often happens that when Congress enacts a law— Is there any legislative history that says what you're saying? Or are you just saying your view of the intent of Congress has to prevail because the record is silent? Well, I think it's often the case that Congress doesn't foresee changes in industry practice in the future in drafting legislation. That's why the tax laws are constantly revised. Almost every year there are innumerable new tax laws passed because circumstances do change. But here they didn't change the law. They left it the same for decades. And it had been that way for decades, and it was because the industry started changing in a very gradual way that this became an issue. But I don't think there was anything that you can attribute to the government, anything nefarious or arbitrary or capricious, in continuing to press the position that the intent of Congress was— and arguing reasonably in the courts that that was a legitimate position. And I think in that context that doesn't amount to a taking that could be the basis for jurisdiction in this case. In spite of the fact that the statute of limitations for some of the tax refunds are only three years, and this tax has been imposed for the past 14, 15 years, you can't go all the way back to recover every payment that's been made by a taxpayer, can you? Well, I think taxpayers who were concerned about this certainly could have filed an administrative refund claim and preserved their rights, and then they could recover it. It's the ones that—if taxpayers, when they started to become aware of this issue, wanted to preserve that right, they did have an option that Congress provided, which was to file an administrative refund claim. And that was something that was available to every taxpayer, and I think had they done so, they could have pursued that in the courts. And I'd like to briefly touch on the waiver argument. I think in the context of IRS's notices with respect to this, there clearly was not any waiver of the requirement that an administrative refund claim be filed. There was—as Judge Michel explained earlier, talking with appellant's counsel, there was a very clear statement that the taxpayer should be preserving their rights by filing administrative refund claims. And the IRS indicated its intent to act on those claims after the litigation had been resolved, and it was clear what direction that was going. And so I don't think there's anything that could be the basis of a waiver, and I'd also just like to reiterate that in Ignelis Milling, I think the Supreme Court makes clear that although there could be a waiver of the regulatory provisions governing the form of a claim for refund, there can't be a waiver of the basic jurisdictional requirement that, in the statute, that a claim for refund be filed. So 7422 action can't lie in this case. Now, this was filed as a class action, wasn't it? That's correct, Your Honor. It was never certified as a class? No, it was not. Can there ever be a class action for tax refunds because of the administrative requirement? I think it's a very difficult situation, I mean, because I think we would argue that it should be dismissed as to any class member who can't show that they filed an administrative refund claim. And I think there's also a question of whether there's a class left in this matter, but that's not new to you, because there probably are people, you know, this is there, it's provided a streamlined procedure now, for your 2006 return, all you have to do is check a box, and you can get a safe harbor-level refund claim, or you can specify, you can provide documentation and get a full refund claim per email, which you're entitled to. And I think probably there are a very large percentage of taxpayers who have taken that route. Does that cover all of the 15 years of the taxing period? Yes, Your Honor, because to the extent that taxpayers didn't file administrative refund claims earlier, they are included under section 742. But again, I think this is the case where if there was a question of loss, it got resolved, and people who wanted to make sure they got in there had the option to file an administrative refund claim. Are there questions about any of the other theories that were raised in this claim? The morning call theory and the black contract theory? There are no questions about those issues, correct? Thank you, Your Honor. Thank you. Mr. Smith? In rebuttal, if there's 14 or 15 years, it's worse. It's 27 years. The first, the Office Max decision by the District Court, CITES Revenue Ruling 79-404, in which the IRS acknowledged that the service did not come within the literal definition of telephone service because the charge for the service did not vary with distance. That's the IRS in 1979. They don't change for 27 years, and that's $5 billion a year the public has been paying, while the statute of limitations has been click, click, clicking away on these folks. So the arbitrary and capricious standard is a highly factual one. It's one where if we get into discovery and we're doing the files here and find out what these people were doing in 79 and 89 and up to the present, and waiting to delay this so the statute of limitations could run, we think we'll find something. We think that as a pleading matter, however, we've said enough to get past a 12B motion. All right. We thank both counsel. We'll take the case under review.